## Pennsylvania Sales Co. v. Troutman.

*Practice, C. P.—Statement of claim—Signature of counsel—Affidavit of defence—Demurrer—Act of May 14, 1915.*

1. Where a statement of claim has not been signed by counsel as required by the Act of May 14, 1915, P. L. 483, objection must be raised in the affidavit of defence by way of demurrer. If this is not done, the defect will be treated as having been waived.

2. It seems that in such case the court may permit the statement to be signed at argument on a rule for judgment on an affidavit of defence on the merits.

*Contract—Sale—Rescission—Delivery—Breach.*

3. Where a contract of sale provides that if the purchaser shall direct the shipment not to be made, the seller may either hold the goods or ship them to the purchaser, and the seller pursues the latter course, the delivery is complete, and the purchaser cannot thereafter rescind the contract.

4. If the contract contains a provision that it shall not be "altered or modified" unless agreed to in writing by the purchaser and seller, and the seller delivers the goods to a common carrier for delivery to the purchaser, and there has been no agreement in writing to alter or modify the contract, there is all the more reason for holding that after such delivery there can be no rescission by the purchaser.

*Assumpsit.* Rule for judgment for want of a sufficient affidavit of defence. C. P. Snyder Co., Oct. T., 1922, No. 72.

*A. F. Gilbert,* for plaintiffs; *C. P. Ulrich,* for defendant.

POTTER, P. J., Nov. 24, 1922.—In this proceeding judgment is asked for by the plaintiffs because, as they allege, of the insufficiency of the affidavit of defence filed.

In the bringing of a suit at law, one of the important steps is the filing of the plaintiff's statement of claim and service of the same on the defendant. The defendant can then file an affidavit of defence, either raising questions of law in the nature of demurrers without answering the averments of fact in the statement or he may file an affidavit of defence on the merits of the case.

In this case the affidavit of defence appears to have been filed as to the merits of the case. No questions of law are raised in it that have not been properly disposed of. Therefore, all that is before the court on the pleadings in the case is whether the affidavit of defence is sufficient or not. If it is, then the rule would need to be discharged and the case would be ordered on the trial list. If it is not, then the rule would be made absolute and judgment would be entered for the plaintiffs. We are of the opinion that the allegations contained in the plaintiffs' statement are not sufficiently or specifically denied in the affidavit of defence, as is required in section 8 of the Act of May 14, 1915, P. L. 483. The denials, if such they are, are too general and are not responsive to the allegations as contained in the statement of claim filed. We must, therefore, hold the affidavit of defence insufficient, and in this behalf the rule for judgment must be made absolute.

At argument, objection was made that the statement was not signed by the attorney for the plaintiffs, as is required by the latter part of section 9 of the Practice Act of 1915. This objection should have been raised in the affidavit of defence by way of demurrer. Not having been so done, this defect must be treated as having been waived. However, we suggest that counsel for the plaintiffs sign the statement, leave to do which is hereby given at this time. This may be a technical objection, but the act provides for it being done, not stating when, and in order to have the pleadings comply with the law, it should be observed hereafter.

The controversy in this case rests on the construction to be placed on a written order or contract for goods, which, in order to set at rest litigation concerning it, might as well be disposed of at this time.

On March 23, 1922, the defendant signed a printed and written order for the purchase of an acetylene lighting plant and fixtures from the plaintiffs, the following being a copy of it:

"Form 28.    12-15-21    3 M

"Pennsylvania Sales Co.

"(hereinafter referred to as the Company)

Tunkhannock, Pa., March 23, 1922.

"Please ship the following generators and appliances f. o. b., Factory or Warehouse, to H. W. Troutman at Selinsgrove, Pa.

"1 Carbide Generator, model PI Carbide Capacity 100 pounds, Fixtures, Burners, Globes, and Supplies, as listed on reverse side.

"one drum carbide

"Stoves 1

"Pipe and Fittings, Schedule No. 17

"$\frac{3}{4}$-in. Black Pipe 135 ft at 10s.—Total $310.50

"In consideration of the acceptance by the Company of this order the undersigned (hereafter known as the purchaser) agrees to pay the Company three hundred and 50/100 dollars six months from date of acceptance of this order.

"Where terms in excess of 30 days are given the purchaser agrees to execute and deliver to the Company within 30 days from acceptance of this order a note for the full amount of this contract, no interest.

3 D. & C.

"The purchaser further agrees that upon failure to execute and deliver to the Company said note within 30 days from acceptance of order the entire amount shall become due and payable in cash.

"Warranty: It is agreed that in accepting this order the Company warrants the apparatus furnished to be a thoroughly durable Galvanized Iron Acetylene Generator, automatic in action, and of good material and workmanship, and that it is on the permitted list of the National Board of Fire Underwriters.

"If the purchaser shall instruct the company not to ship the material the Company may at its option either hold the goods for the purchaser or deliver the material to a common carrier consigned to the purchaser, and either action on the part of the Company shall be considered as full performance of the contract by the Company.

"This order shall become a contract between the Purchaser and the Company upon acceptance thereof in the space below by an officer or a credit manager of said Company, it being understood that this instrument, upon such acceptance, covers all of the agreements between the Purchaser and the Company, and that no agent or representative of the Company has made any statements or agreements, verbal or written, modifying or adding to the terms and conditions herein set forth. It is further understood that upon the acceptance of this order the contract so made cannot be altered or modified by any agent of the Company or in any manner except by agreement in writing between the Purchaser and the Company acting by one of its officers.

"Payment shall be made only by check, draft or promissory note drawn to the order of the Company.     H. W. TROUTMAN     [Seal]
"Accepted at Tunkhannock, Pa.                Purchaser
"3/25/22
"Pennsylvania Sales Co.
   "H. S. Henery, Secy."

On the back of this order or contract is a list of the articles which enter into this contract, but which are not material to the question before us.

Under date of March 31, 1922, the defendant sent a letter to the plaintiffs, by which he attempted to cancel his said order, the following being a copy thereof:

"Freeberg, Pa., Mar. 31, 1922.
"Gentlemen: Cancel order for gas plant. Do not ship, I will not accept it.
                    Yours truly,     H. W. TROUTMAN."

The said lighting plant and fixtures were shipped to the defendant on March 25, 1922. The above letter from the defendant was received by the plaintiffs on April 4, 1922, or ten days after the lighting plant had been shipped. The defendant refused to accept the lighting plant, and later it was sold to pay freight and storage charges, and this suit is brought to recover the purchase price of it, viz., $310.50, with interest thereon from April 23, 1922.

The question is whether or not, after signing this order, the defendant can countermand it. That is the main question in the case. If he can, then the plaintiffs cannot recover. If he cannot, then the plaintiffs can recover the price of the lighting plant, with interest thereon from April 23, 1922.

Let us first consider the order signed by the defendant, in which we find the following: "Where terms in excess of 30 days are given, the purchaser agrees to execute and deliver to the Company within 30 days from the acceptance of this order a note for the full amount of the contract, no interest."

Under the terms of the order or contract, the defendant agreed to pay the plaintiffs the purchase price of $310.50 within six months from the date of the acceptance of the order, which was on March 25, 1922. The terms of this order having been in excess of thirty days, viz., six months, the defendant was bound to execute and deliver to the plaintiffs, not later than April 25, 1922, a note for the full amount of the contract. This he failed to do, in relation to which we find the following in the order or contract: "The purchaser further agrees that upon failure to execute and deliver to the Company said note within 30 days from acceptance of order the entire amount shall become due and payable in cash."

So far as these two clauses are concerned, the entire amount of the purchase price is due in cash, and has been since April 25, 1922.

In this order or contract we find the following: "If the purchaser shall instruct the Company not to ship the material, the Company may, at its option, either hold the goods for the Purchaser or deliver the material to a common carrier consigned to the Purchaser, and either action on the part of the Company shall be considered as full performance of the contract by the Company."

Either of these two options may be exercised: (1) The company may hold the goods for the purchaser, or (2) may ship them to the purchaser, and either of these two is a full performance of the contract by the company. While it is true there is no express language contained in the order relating to the countermanding of it, the foregoing clause fully embraces any attempt to countermand the order by permitting the company to do exactly what the countermand would tell them not to do, and that is, to ship the goods. In our opinion, this clause provides against a countermand with the same force and effect as if specially mentioned. The wording of this provision against a countermand is drawn in such a manner as not to plainly exhibit the meaning on first reading; but it is there, signed by the defendant, and it controls him in this behalf.

It is claimed by the defendant that the provision against countermanding does not apply to him, for the reason that he did not countermand before the company shipped the goods. These goods were shipped on March 25, 1922. The countermand was sent on March 31, 1922, and was not received by the plaintiffs until April 4, 1922. When the countermand came the goods were already gone, had been shipped to the defendant ten days. The plaintiffs had already fulfilled their part of the contract. They did not need to hold the goods any length of time awaiting a countermand. They could ship the goods any time after the execution of the contract. That is just what they did, and even if there was a right to countermand, the countermand came too late, as the goods were already on their way, if not already at their destination. They had been delivered to a common carrier consigned to the purchaser, which was a performance of their part of the contract. It would be folly for the company to recall these goods and again consign them to the purchaser. They had already done that which they were to do. It would be useless to do the same thing over again.

We again find another clause in this order or contract which we deem of great importance in disposing of the question before us, which is as follows: "It is further understood that upon the acceptance of this order the contract so made cannot be altered or modified by any agent of the Company, or in any manner, except by agreement in writing between the Purchaser and the Company, acting by one of its officers."

3 D. & C.

Pennsylvania Sales Co. *v.* Troutman.

The order or contract was accepted on March 25, 1922. It was signed by the defendant on March 23, 1922. All that was necessary to make it binding on both parties was done. It was then a complete contract, just as binding on the one as on the other. If the plaintiffs had refused to ship the goods, could the defendant have compelled them to do so or pay damages? In the absence of reasons over which the plaintiffs could have no control, this question must be answered in the affirmative. And if this order could bind the plaintiffs so firmly, why would it not be equally binding on the defendant?

Then, again, the order or contract is not to be "altered or modified," unless agreed to in writing by the purchaser and the company. If the countermand is to prevail, then the order or contract is so altered or modified as to completely nullify it. If the order or contract is not to be altered or modified, then it is to be and remain in full force and effect as it was when executed. How, then, can it be countermanded? We have no writing whereby these parties agreed to alter or modify it.

We are constrained to regard this transaction as a sale, not as a conditional sale. The consummation of the sale depended on no condition, and neither did the delivery of the goods. Both parties bound themselves, the one to buy and the other to sell, neither depending on contingencies or conditions. The plaintiffs performed their part of the contract by shipping the goods to the railroad station designated by the purchaser, and it then became the duty of the purchaser to take charge of and remove the goods. The plaintiffs had done all they were to do. It then became the duty of the purchaser to perform his part. Not having done so, he is in default.

We have carefully examined the authorities cited by the learned counsel for the defendant. We are of the opinion that they cover a different character of contracts than the one at bar. This is a case where the contract is reduced to writing providing against a countermand, while they are not. This is a contract entire in itself, reduced to writing, and is as binding on the one party as on the other. The plaintiffs, through the common carrier, delivered the goods at the destination designated by the purchaser. They did all they were required to do; therefore, no blame can attach to them.

This writing may be called an order, or what not, but that does not remove the fact that it is a contract entered into by these parties; a written contract under seal, which is a solemn obligation on both parties to do a certain thing. If it is binding on one, it is equally binding on the other. It imposes mutual obligations in its fulfillment, and the cancellation of it must also be mutual.

If the time should ever come when contracts are to be legally permitted to be regarded as lightly as was this one by the defendant, then, indeed, the business affairs of the public are in imminent peril.

We must hold, therefore, that this is not a conditional sale; that the contract has been broken by the defendant, and that he is in default.

And now, to wit, Nov. 24, 1922, the rule for judgment is made absolute, and judgment is directed to be entered in favor of the plaintiffs and against the defendant, upon payment of the fees incident thereto, in the sum of $310.50, with interest from April 23, 1922. An exception is noted for the defendant and a bill is sealed.